MEYER v. SHEFFIELD et al. (No. 8071.)

(Court of Civil Appeals of Texas. Dallas. Jan. 11, 1919.)

1. Vendor and Purchaser ☜239(1)—Innocent Purchaser for Value.

If purchaser of land did not know prior to purchase that deed to his grantor was a mortgage, he was in law an innocent purchaser for value as against heirs of mortgagor.

2. Vendor and Purchaser ☜244—Purchase with Notice of Equity—Sufficiency of Evidence.

In statutory trespass to try title, defendants, heirs of widow from whom plaintiff's grantor acquired title, setting up that widow's deed was mortgage and known to have been such by plaintiff when he purchased, evidence tending to prove defense held insufficient to sustain verdict for defendants.

Appeal from District Court, Henderson County; John S. Prince, Judge.

Suit by Joe Meyer against Lemon Sheffield and others. From the judgment, plaintiff appeals. Reversed and remanded.

E. P. Miller, of Athens, and Simpson, Lasseter & Gentry, of Tyler, for appellant.

Justice & Justice and W. R. Bishop, all of Athens, for appellees.

RASBURY, J. Appellant sued certain of the appellees in statutory trespass to try title. Others who were not original defendants intervened in the suit. Appellees, with one exception, were heirs of George and Laura Wilson, the common source of title to the land in controversy. There was jury trial resulting in verdict that appellees were entitled to the land, and appellant to judgment for $297.29, the balance due on certain purchase money notes hereinafter referred to, with interest thereon from February 24, 1895, at 6 per cent. and foreclosure of the vendor's lien followed by judgment for $697.95 and such foreclosure of lien on the land, etc., from which this appeal is taken.

The evidence discloses the following chain of record title culminating in appellant: S. M. Ansley et ux., conveyed the land in controversy to Robert Wilson December 14, 1889, in consideration of three notes due, respectively, November 15, 1890, 1891, 1892. All the notes were payable in lint cotton, two each by delivery of five bales weighing 500 pounds and one by six similar bales. Robert Wilson, who was married at the time of the conveyance, died August 23, 1894, intestate, survived by his wife, Laura, and appellees. Thereafter on February 24, 1895, Laura conveyed the land to A. Harris, reciting the consideration to be a balance of $297 due on the Ansley notes just described, which had been acquired

by Harris, and which was declared to be a community debt. On March 18, 1912, Harris, in consideration of $800, conveyed the land to Pitluck & Meyer, a firm composed of M. Pitluck and Joe Meyer, by special warranty deed. In January, 1917, Pitluck conveyed his interest in the land to Meyer. January 12, 1917, this suit was commenced. In opposition to the title asserted by appellant just detailed, appellees alleged that, while the conveyance from Laura Wilson to A. Harris was in form a warranty deed, it was in fact a mortgage given to secure payment of the balance due on the Ansley notes then held by A. Harris of which appellant had knowledge at the time he acquired the land. Appellant in replication of such claim averred, among other matters, that he paid a valuable consideration for the land without notice of any equitable interest of appellees in the land. On the issue so raised the jury found in favor of appellees.

Appellant's first assignment of error, in substance, asserts that such finding is without support in the evidence. The issue requires, of course, a review of the evidence. The facts deducible therefrom, all conflicts being resolved in favor of the verdict, are, stated in our language, substantially these: At the time Robert Wilson acquired the land from Ansley, it was of the value of $750 or $1,000, and the improvements thereon consisted of two small log houses. Robert Wilson after his purchase of the land reduced his indebtedness in money to $270. Upon this debt he had five bales of cotton to apply of the probable value at that time of $200. At the suggestion of Ansley, Harris, to whom Wilson was largely indebted on store account, purchased the unpaid notes and took over the five bales of cotton and credited their value on the store account. Subsequently, and after the death of Robert Wilson, as we have shown, Laura, his surviving wife, conveyed the land to A. Harris; the recited consideration being an unpaid balance of $297 on the Ansley notes. At the time the case was tried, both Robert and Laura Wilson were dead, and the evidence supporting the claim that the deed to Harris was in fact a mortgage consists of the following facts and circumstances: For four years after conveying the land to Harris, Laura Wilson assessed it and paid the taxes thereon. In the fall of the year in which Laura conveyed the land to Harris, or the subsequent year, Lipsitz, Harris' agent, advised Laura Wilson that she owed on the land only $192. On another occasion, placed at three years after the conveyance, Harris, on an occasion when he presented Laura with a calico dress and a half dollar, told her the home was hers. From the time Robert Wilson acquired the land and up to the period Harris conveyed to Pitluck & Meyer, Robert, his wife Laura, or the ap-

pellees, their heirs, remained in continuous possession of same using and cultivating it without adverse claim by Harris. They similarly occupied and used it after Harris conveyed to Pitluck & Meyer, without adverse claim by latter until 1915, when for the first time appellant demanded rent, which appellees refused to pay and denied appellant had any interest in the land. Subsequent to the time Harris deeded the land to Pitluck & Meyer, Laura Wilson died, and appellees, from money received on insurance on her life, constructed a new five-room residence on the place without objection by appellant. They also, after their mother's death, built new wire fences on the place, purchasing part of the wire for that purpose from appellant. Prior to and at the time Harris conveyed the land to Pitluck & Meyer, and subsequently, Laura Wilson, while living, and some of the appellees, "traded" with appellant and had for several years; but after the conveyance to appellant he made no claim to the land until the occasion in 1915 just enumerated. When appellees, while trading with appellant, asked appellant about paying the taxes, appellant would tell them to bring him the cotton and he would pay the taxes. During the year 1915, after Harris conveyed the land to Pitluck & Meyer, appellant agreed with some of the appellees to exchange a farm of his for the one in controversy, which was not consummated because other of the appellees receded from the agreement or refused to join in it. Appellees never paid any rent to appellant for Harris. A witness testified that appellant in 1912 or 1913, when the witness was marketing his cotton, admitted that Laura Wilson owned the land.

The facts deducible from the evidence tendered by appellant are in radical conflict with those just detailed and tend with much probative force and sequence and corroborative circumstances to show that the land was purchased outright by Harris from Laura Wilson, survivor of the community, in consideration of the unpaid purchase-money notes and the settlement of a store account of considerable proportions, which was also a community debt, followed by regular payment of rental thereafter coupled with failure to assert any adverse title.

[1, 2] In Joske v. Irvine, 91 Tex. 575, 44 S. W. 1059, it was said in effect that it is the duty of the trial court to instruct verdict, and by analogy the duty of this court, when the issue is presented, to reverse a cause, though there be slight evidence in support of the verdict, if its probative force be so weak as to raise only a mere surmise or suspicion of the fact sought to be established, since in legal contemplation such testimony falls short of being "any evidence." The question for our determination then is: Do the facts detailed raise only a mere surmise or suspicion that

the conveyance to Harris by Laura Wilson was intended as a mortgage and that Meyer was cognizant of that fact? Restated in a general way, the facts as to Harris disclose that, in order to secure the cotton due Ansley upon the purchase-price notes and apply same upon payment of Robert Wilson's store account, Harris purchased the notes and took over the cotton and so applied it. Shortly after Robert's death, his wife, Laura, deeded the land to Harris, the recited consideration being a balance of $297, on the Ansley notes, which was much less than the value of the land. Subsequent to this deed, both Harris and Lipsitz, his agent, made admissions indicating a reduction of the debt and that the deed was but a mortgage. From the time of the conveyance to Harris until he conveyed it to Pitluck & Meyer, a period of 17 years, Laura Wilson and her children remained in possession of the premises, paying no rental according to appellees, but paying, according to appellant, a rental of one bale of cotton per annum. Harris conveyed the land to Pitluck & Meyer March 18, 1912, and it does not appear from the evidence that any of the facts and circumstances just related were brought to their notice at that time. It is true that, after the conveyance to Pitluck & Meyer up to the time suit was filed, a period of five years, Laura Wilson, until her death, and after her death, her children, the appellees, remained in possession of the land, paying no rental therefor according to the evidence of appellees, and that appellant without protest permitted appellees to build a five-room house upon the place and never made any claim to the land to appellees until 1915, when an agent of appellant introduced the question of rent, which appellees declined to pay. On the contrary, appellant contracted with appellees to exchange the land in controversy for another tract belonging to appellant, which failed of consummation; and also admitted to a witness that the land belonged to Laura Wilson, but all of which transpired after they acquired the land.

The facts, which we have stated in the most favorable light for appellees, speak for themselves. From them, in deference to the finding of the jury, we have fairly endeavored to find some support for the finding that appellant knew, when he acquired the land from Harris, that the deed to Harris was in fact a mortgage; for, if appellant did not know prior to his purchase that the deed to Harris was a mortgage, he was in law an innocent purchaser for value of the land. If we concede that the evidence is sufficient to sustain the finding of the jury that as between Harris and appellees the deed was in fact a mortgage, nevertheless there is in the record no fact or circumstance tending to show that appellant had notice of that fact when he pur-

chased the land. What he did and said or permitted subsequent to his purchase as we have related it, if connected with some knowledge of the facts prior to his purchase, would obviously furnish strong corroboration, but, standing alone and without other connection with the main issue, presents a case largely of surmise and suspicion and one we do not feel at liberty to approve.

The case is, accordingly, reversed and remanded, without considering the other issues presented, save to say, in reference to the refusal of the special charge intended to present affirmatively appellant's defenses, that such presentation is the settled right of a defendant, which can be preserved on another trial without the necessity of discussing the issue here presented.

Reversed and remanded.